UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHARLES J. HARDIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00417-JRS-MJD |
| | ) | |
| ROBERT BURGHER, | ) | |
| FRANK VANIHEL, | ) | |
| BARBARA BROCK, | ) | |
| ABBIE PLUNKETT, | ) | |
| VAN FLEET, | ) | |
| CARPENTER, | ) | |
| AMBER WALLACE, | ) | |
| FRANK LITTLEJOHN, | ) | |
| RICHARD BROWN, | ) | |
| S. MAHURIN, | ) | |
| POWERS, | ) | |
| | ) | |
| Defendants. | ) | |

**Order**

Plaintiff, Charles Hardin, is an inmate at Wabash Valley Correctional Facility. He initiated this action under 42 U.S.C. § 1983, alleging numerous constitutional violations against prison officials. The Court screened his Amended Complaint, (ECF No. 45), and determined that Hardin stated claims for (1) First Amendment retaliation, (2) deprivation of his First Amendment right to mail, (3) deprivation of his First Amendment right to access courts, (4) and a Fourteenth Amendment "class of one" discrimination claim. (Order 2, ECF No. 44.) Defendant Mahurin filed a Motion for Summary Judgment and the other Defendants filed a Motion for Summary Judgment. (Mahurin Mot., ECF No. 92; Defs.' Mot., ECF No. 88.) Hardin was served

with notice of his right to file a response in opposition to the motions for summary judgment, (ECF Nos. 91, 94), but he filed nothing in response.

## I.    Background

Hardin's claims arise from his attempts to appeal and collaterally attack his 2005 conviction for aggravated battery, robbery, and burglary and/or his resulting sentence.  *See State v. Charles Junior Hardin*, 92C01-0504-FA-000069 (Whitley Cir. Ct. Oct. 10, 2005).  Specifically, Hardin was placed on suicide watch while in custody during the 2005 prosecution and sentencing.  (Hardin Dep. 27:1–21, ECF No. 89-1.) Hardin maintains that while on suicide watch, he was deprived of writing materials, which rendered him incompetent to stand trial because he was unable to communicate with his defense attorney and to assist in his defense.  (*See id.* at 16:14– 25, 27:1–21.)

The basis for Hardin's allegations against Richard Brown and Frank Littlejohn is that, as superiors, they failed to train, failed to intervene, or turned a blind eye when their subordinates at Wabash Valley Correctional Facility deprived Hardin of access to mail, access to courts, and retaliated against him over many years.  (Am. Compl. ¶ 43, ECF No. 45.)  In particular, Hardin alleges that in 2007, prison officials failed to deliver him court mail.  (Hardin Dep. 20:1–10, ECF No. 89-1.)  More generally, Hardin alleges that he was continually, over the course of about fifteen years, deprived of access to the law library and a phone, which impeded his ability to access courts. (Am. Compl. ¶ 28, ECF No. 45; *see e.g.,* Hardin Dep. 19:12–20, ECF No. 89-1.)

Hardin's allegations against the other Defendants, stem from his 2021 and 2022 attempts to obtain his 2005 prison medical records to support his argument that he was incompetent during this conviction and/or sentence. (Hardin Dep. at 8:19–9:8, ECF No. 89-1.) Specifically, Hardin alleges that he did not receive all of his records from Wabash Valley Correctional Facility after his initial request. So, on June 2, 2022, he served a subpoena for all of his mental health records from 2002 through 2021 on Robert Bugher, in his official capacity, who was a senior attorney for the Indiana Department of Corrections.[1] (*Id.*; Bugher Aff. ¶ 5, ECF No. 89-7.)

On July 15, 2022, Bugher wrote Hardin a letter advising him to ask his "counselor" to assist him in submitting a records request from Centurion—the private medical provider for the Indiana Department of Corrections—because the Indiana Department of Corrections does not control medical record document production. (Bugher Aff. ¶¶ 4, 6, ECF No. 89-7.) In September and October of 2022, the Office of Attorney General received seventy-two pages of Hardin's medical records from Centurion and promptly forwarded them to Hardin. (*Id.* ¶ 7.) Hardin eventually did receive 578 pages of medical records, dating back to 2002, which he says supports his theory of incompetency. (*See* Hardin Dep. 16:3–13, ECF No. 89-1.) These medical records were delivered to Hardin in June, July, and October of 2023. (*See* Bugher Aff. ¶ 8, ECF No. 89-7.)

---

[1] Bugher's name is misspelled as "Burgher" in the complaints and case caption. There is only one "r" in his name, and it comes at the end. (*See* Bugher Aff., ECF No. 89-7.) The Clerk is directed to update the case caption accordingly.

Hardin, however, alleges that some of the medical records relating to his 2005 suicide watch have still not been produced. (*Id.* at 16:1–17:25.) He maintains that, at Bugher's direction, Defendant Shauna Mahurin, who was a records clerk in 2022, improperly destroyed these medical records. (*Id.* at 15:14–16:3.) Hardin alleges that the records were "destroyed to hide the fact that the prison and [Indiana Department of Corrections]" has been denying him access to the mail. (*Id.* at 16:14–17:8.) Defendants, however, maintain that Centurion controls all aspects of responding to inmates' medical records requests and destruction of inmates' medical records, not the Indiana Department of Corrections. (Bugher Aff. ¶ 4, ECF No. 89-7.)

Hardin also claims that approximately five days after serving the subpoena on Bugher, "all of the sudden," Hardin was deprived of court mail, which gave rise to a portion of his present claims for retaliation, deprivation of access to courts, deprivation of access to mail, and unequal protection of law. (Hardin Dep. 9:1–8, ECF No. 89-1.) Specifically, he alleges that, at Bugher's direction, Defendants began confiscating Hardin's court mail without proper notice. (*Id.* at 9:9–20, 33:1–13.) Defendants, however, maintain that they either never received the mail that Hardin alleges was confiscated, or that they were merely following Wabash Valley Correctional Facility's mail safety procedures, which at times call for confiscation.

As background, Wabash Valley Correction Facility's mail inspection and investigation process was as follows. First, mailroom staff would visually inspect incoming mail for indicia of a safety or security threat. (Bugher Aff. ¶¶ 14–16, ECF No. 89-7.) If the mail passed the visual inspection, mail staff would contact the sender

to confirm that they were affiliated with the return address.  (*Id.*)  If staff could not confirm the address, they were required to confiscate the mail and forward it to the Office of Investigations and Intelligence ("OII") for further investigation.  (*Id.*)  If OII staff could not verify the sender, or if the mail otherwise did not meet the inspection standards, the mail would be permanently confiscated or destroyed.  (*Id.*)

Hardin's basic factual allegations regarding confiscated court mail that occurred during the relevant period (2021 and thereafter) are as follows.  On June 8, 2022, Amber Wallace separated Hardin's incoming legal mail ("Mail No. 1") and forwarded it to the investigation team.  (Am. Compl. ¶ 56, ECF No. 45.)  The investigator, Barbara Brock, called the Whitley County clerk's office to verify the authenticity of the mail.  (Hardin Dep. 11:12–25, ECF No. 89-1.)  The clerk informed Brock that the Whitley County clerk's office does not put stamps on their envelopes, so Brock deemed the letter suspicious and confiscated the mail.  (*Id.*)  The confiscation was approved by Defendant Vanvleet.[2]  (Grievance Response Report at 3, ECF No. 89-8.)  Hardin was notified on June 10 that Mail No. 1 was confiscated.  (*Id.* at 8.)

Next, on July 22, 2022, Wallace screened a letter ("Mail No. 2") addressed to Hardin from the Kosciusko County Court.  (Am. Compl. ¶ 59, ECF No. 45; Hardin Dep. 43:15–44:2, ECF No. 89-1.)  Wallace forwarded Mail No. 2 to Abbie Plunkett for investigation.  (Hardin Grievance at 3, ECF No. 89-9.)  Plunkett confiscated the mail

---

[2] The case caption spells Vanvleet's name as "Van Fleet."  This appears to be an error from a misspelling in the first Complaint.  (ECF No. 2.)  The Court uses what it believes to be the correct spelling and directs the Clerk to correct the caption accordingly.

because she was unable to verify the sender.  (*Id.*)  The confiscation was approved by Defendant Carpenter.  (*Id.*)

Hardin also alleges that four pieces of legal mail ("Mail No. 3 through 6") "disappeared" around this period.  (Hardin Dep. 48:5–14, ECF No. 89-1.)  Defendants, however, maintain that there is no record that Wabash Valley Correctional Facility ever received Mail No. 3 through 6.  (Defs.' Mem. 13–14, ECF No. 90.)

Hardin alleges that legal mail ("Mail No. 7") from the Indiana Court of Appeals, was delivered late.  (Grievance Response Report at 23, ECF No. 89-8.)  The mail was postmarked on September 19, 2022; it was delivered fourteen days later on October 3, 2022.  (*Id.*)  Hardin complained about the delay, but prison staff denied Hardin's grievance, explaining that mailroom staff had not received the letter until October 3, 2022, and they delivered it to Hardin that day.  (*Id.*)

Hardin also alleges that Defendant Powers mishandled what the Parties refer to as "inter-facility mail."  Inter-facility mail is electronic court filings that are printed and delivered to inmates.  (Defs.' Mem. 1 n.1, ECF No. 90.)  Hardin alleges that Powers improperly left these filings on Hardin's cell floor without obtaining Hardin's signature or allowing Hardin to observe Powers' inspection of the letters, (Hardin Dep. 58:1–59:17, ECF No. 89-1), and he alleges that Powers delivered a court filing, via inter-facility mail, forty days late in May of 2023, (*id.* at 61:2–4, 68:4–10).

Hardin alleges that in July of 2022, he complained to Defendant Frank Vanihel about Hardin's deprivations of mail, access to courts, and retaliation after the Bugher subpoena.  (Am. Compl. ¶ 62, ECF No. 45.)  Hardin alleges that Vanihel told him that

Vanihel would personally look into the matter, but Vanihel failed to conduct a proper investigation and failed to hold his subordinates accountable for their actions.  (*Id.*)

Defendant Mahurin moved for summary judgment.  (ECF No. 92.)  Defendants Bugher, Vanihel, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Powers, Brown, and Littlejohn collectively filed a separate motion for summary judgment.  (ECF No. 88.) Hardin was served with notice of his right to respond, but he did not file a response.

Finally, although Hardin's complaints state that Defendants acted in their official capacities, (*see, e.g.,* Compl. ¶¶ 12–17, ECF No. 2; Am. Compl. ¶ 55, ECF No. 45.) he failed sufficiently to plead official capacity claims against Defendants.  Defendants are all agents or employees of the Indiana Department of Corrections, which is treated as the state of Indiana for the purposes of state sovereign immunity.  *See Grosz v. State of Ind.,* 730 F. Supp. 1474, 1478 (S.D. Ind. 1990) ("[T]he Indiana Department of Corrections performs a state governmental function and . . . any judgment against the department would be paid out of the state treasury.") (cleaned up).  The Eleventh Amendment "usually bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007); *see also Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 535 n.2 (7th Cir. 2023) ("Because another section of the second amended complaint could be read to suggest that [the plaintiff] also sought monetary relief against the individual defendants in their official capacities, it is important to note that these damages are unavailable.  Section 1983 does not allow awards of damages against states, and

official-capacity suits against state actors are treated as suits against the states themselves.").

## II.    Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court only has to consider the materials cited by the Parties. Fed. R. Civ. P. 56(c)(3).  It need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017).  A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's

fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Where, as here, a non-movant fails to respond to the summary judgment motion, facts alleged in Defendants' motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file a response brief and identify disputed facts). But "[e]ven where a nonmovant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment [is] proper given the undisputed facts . . . ." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## III.    Analysis

As a preliminary matter, the Court does not consider Hardin's allegations that he was deprived of writing utensils while on suicide watch in 2005, when assessing any of his claims. Defendants produced unrefuted evidence that this deprivation did not occur at Wabash Valley Correctional Facility. (*See* Hardin Dep. 27:4–10, 98:25–99:2, ECF No. 89-1) ("I was on suicide watch at RDC."). Hardin has not controverted these facts in a responsive briefing, and there is nothing in the record to suggest that Hardin was deprived of writing utensils at Wabash Valley Correctional Facility, so the Court accepts this as true. *See* S.D. Ind. L.R. 56-1(f). Additionally, Hardin has not produced any evidence that Defendants could have been personally responsible for any deprivation of writing utensils that may have occurred at other facilities. There is no designation of record evidence that Defendants personally deprived

Hardin of writing utensils or to otherwise refute the evidence designated by the Defendants that they did not deprive Hardin of writing utensils. *Id.*

a. *Access to Courts*

"Prisoners have a fundamental right of access to the courts that prisons must facilitate by providing legal assistance." *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)) (emphasis added). "[T]he mere denial of access to a prison library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). To state a plausible access-to-courts claim, the plaintiff "must allege that some action by the prison has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." *Maxy*, 674 F.3d at 661. "[T]he very point of recognizing any access claim is to provide effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). The right to access the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. To prevail, then, a prisoner must "submit evidence that he suffered actual injury . . . and that the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citations omitted). Thus, the withholding or confiscating of mail must be shown to have prejudiced the prisoner to make out an access-to-court claim. *Id.*

To prevail on an access to courts claim, a plaintiff must establish "(1) a non-frivolous, underlying claim, (2) the official acts frustrating the litigation, and (3) a

remedy that may be awarded as recompense but that is not otherwise available in a suit or a settlement." *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022) (quotation omitted). To satisfy the second element, there must be something "more than just some minimal degree of impediment" to the plaintiff's litigation efforts. *Id.* at 1288. There must be some "meaningful impediment" to the plaintiff's underlying claim. *Id.*

Here, Hardin's access to courts claims fail at least because there is no evidence that his litigation efforts were frustrated by any failures or delays in receiving mail or medical records. Defendants cited this in their Statement of Material Facts Not in Dispute. (*See* Defs.' Mem. 13–14, 16 ECF No. 90.) The Court accepts this as true because it is supported by admissible evidence, (*see* Hardin Dep. 49:14–51:3, 51:6–22, 68:4–10, ECF No. 90), Hardin has not specifically controverted this assertion in a responsive brief, and there is no evidence in the record that Hardin's mail or medical records were impermissibly withheld or delayed as alleged much less, even if they were, that Hardin suffered a meaningful frustration to his litigation efforts. *See* S.D. Ind. L.R. 56-1(f). In short, there is no question of material fact that any alleged action by the Defendants regarding Hardin's mail or medical records has "frustrated or is impeding an attempt to bring a nonfrivolous legal claim." *Maxy*, 674 F.3d at 661. Accordingly, at least because Hardin's litigation efforts were not frustrated to the extent that he was prejudiced in any pending litigation, no reasonable jury could find that Hardin was deprived of his constitutional right to access courts.

Therefore, summary judgment is granted on Hardin's access to courts claims in favor of Defendants Bugher, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Powers, Brown, and Littlejohn.

### b. *First Amendment Retaliation*

To prevail on a First Amendment retaliation claim, a prisoner must show that he (1) engaged in constitutionally protected speech, (2) suffered a deprivation that would likely deter First Amendment activity, and (3) the prisoner's First Amendment activity was "at least a motivating factor" in the defendant's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008)).  For the third element, a "motivating factor" amounts to a causal link between the protected activity and the unlawful retaliation. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

A plaintiff can prove retaliation with circumstantial evidence, including evidence of suspicious timing. *Id*. However, "suspicious timing alone will rarely be sufficient to create a triable issue because 'suspicious timing may be just that—suspicious . . . .'" *Id.* (quoting *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011)). Here, Hardin has not met his burden of production to convince a reasonable jury that his mail disruptions or delay in receiving medical records were caused by his subpoena to Bugher.

Beginning with Defendant Powers, the record lacks any evidence, beyond Hardin's self-serving, otherwise unsupported, testimony, *see Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (explaining that while the nonmoving

party is entitled to all reasonable inferences in their favor, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion"), that a forty-day delay in receiving inter-facility mail ever occurred. For example, Hardin did not produce any documentary evidence or sworn statement demonstrating that a court filing was docketed on a particular date, entitling him to delivery via inter-facility mail within a certain timeframe. But even if a jury believed Hardin's testimony, the record lacks any evidence that Powers was personally responsible for any such delay. While Powers allegedly delivered the late mail on day forty, there is no evidence that Powers had the authority or the ability to deliver the inter-facility mail on an earlier date. Next, Hardin did not produce any evidence that the delay was caused by the subpoena on Burgher, apart from what Hardin believes is suspicious timing. As noted, suspicious timing is rarely enough to establish First Amendment retaliation. Taken together, no reasonable jury could conclude that Powers retaliated against Hardin for engaging in First Amendment activity.

Turning to the confiscation of Mail No. 1 and 2, the fourteen-day delay in delivering Mail. No. 7, and the delay in receiving medical records in response to the subpoena—Hardin has not met his burden to prove retaliation by circumstantial evidence. *See Manuel*, 966 F.3d at 680 (explaining that once the defendant produces evidence that the deprivation would have occurred regardless of the protected activity, the burden shifts to the plaintiff to demonstrate that the stated reason was pretextual).

Defendants produced undisputed evidence that these disruptions would have occurred regardless of the subpoena Hardin served to Bugher. Defendants produced

13

evidence that Mail No. 1 and 2 were confiscated because of suspicious postage. They produced evidence that Mail No. 7 was delivered as soon as the facility received it from the U.S. Post Office. Defendants produced evidence that Centurion, not Defendants, controlled all aspects of medical records destruction and were solely responsible for responding to inmates' medical records requests. Hardin did not cite to any evidence that suggests these justifications were pretextual. Thus, Hardin has not met his burden of production to survive summary judgment.

Therefore, no reasonable jury could conclude that Defendants retaliated against Hardin.[3] Summary judgment is granted on Hardin's First Amendment retaliation claims in favor of Defendants Bugher, Vanihel, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Brown, and Littlejohn.

### c. *Access to Mail*

Prisoners have a First Amendment right to send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). However, "sporadic and short-term delays in receiving mail are insufficient" to prevail on an access to mail claim, *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000), when the disruptions are non-content based, *Rowe*, 196 F.3d at 782. "[I]t is

---

[3] The Court does not include the alleged failure to deliver mail in 2007, or deprivation of access to the phone or law library, when analyzing the retaliation claim because this occurred before the subpoena to Bugher. (*See* Am. Compl. ¶¶ 28–29, ECF No. 45.) Similarly, the Court does not consider the alleged delay in deliver Mail No. 3 through 6. Defendants note in their Statement of Material Facts Not in Dispute that there is no evidence that the Wabash Valley Correctional Institution ever received this mail. (*See* Defs.' Mem. 13–14, ECF No. 90.) Hardin has not specifically controverted this assertion in a responsive briefing, it is supported by admissible evidence, (see Hardin Dep. 17:17–19, ECF No. 89-1), and there is nothing in the record proving that Mail No. 3 through 6 ever arrived at the facility. So, the Court accepts Defendants' assertion as true. *See* S.D. Ind. L.R. 56-1(f).

well established that prison officials may inspect mail for contraband." *Jenkins v. Huntley*, 235 F. App'x 374, 376 (7th Cir. 2007); *see also Kaufman v. Karlen*, 270 F. App'x 442, 445 (7th Cir. 2008) ("Restrictions on this right" to receive information through the mail "are permissible if they are reasonably related to legitimate penological objectives.") (internal quotation omitted).

The facts in *Rowe* are illustrative. There, the prisoner recorded the delivery of thirty-four items of mail over an approximately four-month period. *Rowe*, 196 F.3d at 780. Sixteen of the items took seven days or less to reach the prisoner from the date of the postmark, ten items took fourteen days or less, eight items took fourteen or more days—one of which took twenty-six days. *Id.* Two items were classified as "priority mail," one of which took seven days to reach Mr. Rowe from the date of postmark and the other took twenty days. *Id.* The court held that the prisoner failed to state a claim because these delays were "relatively short-term and sporadic" and not content-based disruptions. *Id.* at 782.

In the first instance, as noted above, there is no evidence of record that Hardin's mail was *impermissibly* withheld, much less that it was done so by any of the Defendants. Here, Hardin's evidence of mail disruption amounts to only sporadic, short-term, and non-content-based, disturbances. For purposes of the Defendants' summary judgment motion, Hardin has only produced evidence of two instances of confiscated U.S. postal mail (Mail No. 1 and 2) and a single instance of a delay in receiving U.S. postal mail (Mail No. 7). Each of these disruptions occurred in 2022.

15

The Court does not consider Hardin's allegations that Mail Nos. 3 through 6 disappeared in evaluating his access to mail claim. As noted above, Hardin has designated no evidence to refute Defendants' note in their Statement of Material Facts Not in Dispute that there is no evidence that the Wabash Valley Correctional Institution ever received this mail. (*See* Defs.' Mem. 13–14, ECF No. 90.) Hardin has not specifically controverted this assertion in a responsive briefing, it is supported by admissible evidence, (*see* Hardin Dep. 17:17–19, ECF No. 89-1), and there is nothing in the record proving that Mail No. 3 through 6 ever arrived at the facility. So, the Court accepts Defendants' assertion as true. *See* S.D. Ind. L.R. 56-1(f). Because Mail No. 3 through No. 6 was never received at Wabash Valley Correctional Institution, that mail could not have been withheld.

Turning to the mail of which there is evidence of both receipt and confiscation or delay, Hardin has also not produced any evidence that these alleged deprivations were content based or did not otherwise serve some legitimate penological objectives. Defendants produced evidence that Mail No. 1 and 2 were confiscated for security risks and that they delivered Mail No. 7 as soon as it arrived in the facility. Hardin has not produced any evidence to controvert Defendants' evidence or to otherwise indicate that these reasons were pretextual.

Thus, there is evidence of only three instances of mail disruptions, none of them being based on content, over a one-year period in 2022. Hardin also attested that one piece of mail was undelivered in 2007 and one piece of inter-facility mail was delivered forty days late in 2023. Hardin has not produced any evidence, beyond his

own self-serving though unavailing speculation, *see Herzog,* 742 F.3d at 806, that these disturbances ever occurred or were content based.  For example, while the Defendants deny ever receiving the alleged mail from a court in 2007, noting that there is no record of it ever being received, there is also no record of any court having ever sent a mailing to Hardin in 2007.  Neither has Hardin produced a copy of, or any other evidence establishing the existence of, the 2007 piece of mail.  The same holds true for the 2023 piece of court mail Hardin maintains was delivered forty days late.  There is just no record evidence that it ever existed, that it was ever sent to Hardin, that it was ever received by the prison, or that Powers ever delivered it in inter-facility much less that he could have delivered it any earlier.  As the "put up or shut up" time, a party has the burden of producing admissible evidence at summary judgment to prove their claims. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021).  Hardin has failed to do that with regard to either the 2007 or the 2023 piece of mail.  In any event, a couple of isolated instances, removed one from the other by more than fifteen years no less, do not rise to the level of a constitutional violation.  Moreover, any claim based on the 2007 piece of mail is barred by Indiana's two-year statute of limitations applicable period, which applies to § 1983 actions. *Camm v. Faith*, 937 F.3d 1096, 1107 (7th Cir. 2019), and Hardin has not argued and cannot show a continuing violation.  *See, e.g., Logan v. City of Chicago*, 4 F.4th 529, 540 (7th Cir. 2021) (explaining that when the tort "involves continuous or repeated injurious behavior" the continuing violation holds the limitations period in abeyance).

17

Taken together, then, there are only a handful of disruptions supported by the record, with no material issue of fact being establish with respect to others, and these handful of disruptions are either non-content-based disruptions; e.g., based on security concerns, or are too isolated, sporadic and short-term, even counting the few speculative or non-established occasions, for a reasonable jury to conclude that Hardin was deprived of his First Amendment right to access mail. *See Schroeder v. Drankiewicz*, 519 F. App'x 947, 950 (7th Cir. 2013) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state a First Amendment claim)).

Therefore, summary judgment is granted in favor of Defendants Bugher, Vanihel, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Brown, and Littlejohn on Hardin's access to mail claims.

### d. Class of One Equal Protection

To prevail under a "class-of-one" claim for unlawful discrimination under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must establish (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 770–71 (7th Cir. 2021). To satisfy the second element, a plaintiff must show that there was no "*conceivable* rational basis" for the difference in treatment. *Id.* at 771 (emphasis in original) (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)).

Here, Hardin has not produced evidence of a similarly situated comparator who received more favorable access to courts, access to mail, or access to medical records. Even if he had, Defendants presented a conceivable set of facts that could provide a rational basis for any disparate treatment.  Namely, that Mail No. 1 and 2 were confiscated because the postage was suspicious; the correctional facility never received Mail No. 3 through 6; the correctional facility delivered Mail No. 7 as soon as it arrived; and that nonparty Centurion controlled all aspects of responding to inmate requests for medical records and maintained its own policies and procedures for destruction of medical records.[4]  *See 145 Fisk*, 986 F.3d at 771 ("Any reasonably conceivable state of facts that could provide a rational basis will suffice . . . . [I]t is only when courts can hypothesize no rational basis for the action that allegations of animus come into play.") (cleaned up).

Accordingly, no reasonable jury could conclude that Defendants discriminated against Hardin in violation of the Equal Protection Clause.  Therefore, summary judgment is granted in favor of Defendants Bugher, Vanihel, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Brown, and Littlejohn on Hardin's equal protection claims.

    *e.  Defendant Shauna Mahurin*

---

[4] Defendants did not explain a rational basis for the alleged one-time forty-day delay in delivering one inter-facility mail piece to Hardin, or the alleged failure to deliver one specific piece of mail to Harding in 2007, beyond asserting these incidents never even occurred, but Hardin did not produce any evidence that these delays did ever occur, beyond his own speculative testimony.

Hardin alleges that Shauna Mahurin destroyed or lost his medical records from November of 2005.  (Am. Compl. ¶ 72, ECF No. 45.)  Mahurin moved individually for summary judgment on Hardin's equal protection claim against her.  (ECF No. 92.)

Hardin's failure to meet his burden of production against the other Defendants on his equal protection claims against them, as discussed above, is similarly fatal to his claim against Mahurin:  Namely, that nonparty Centurion controlled the medical records, and Hardin has not produced any evidence that Mahurin treated Hardin differently than a similarly situated comparator in any event.

Furthermore, Mahurin's uncontested testimony is that her access to medical records was limited to copying and transmitting, not destroying medical records.  (Mahurin Aff. ¶ 5, ECF No. 92-1.)  Thus, she argues, she could not have participated in the alleged retaliatory scheme.

Mahurin cited this fact in her Statement of Material Facts Not in Dispute.  (Mahurin Mem. ¶ 4 at 2, ECF No. 93.)  The Court accepts this as true because the fact is supported by admissible evidence, Hardin did not specifically controvert this assertion in a responsive briefing, and there is nothing in the record that undermines this assertion.  *See* S.D. Ind. L.R. 56-1(f).

Therefore, no reasonable jury could find that Mahurin discriminated against Hardin in violation of the Equal Protection Clause.  *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("An individual cannot be held liable in a § 1983 action unless [they] caused or participated in an alleged constitutional deprivation.").  Mahurin's motion for summary judgment is therefore granted.

### f. *Brown, Littlejohn, and Vanihel*

Hardin alleges that Defendants Brown, Littlejohn, and Vanihel, are liable in their capacities as supervisors for failing to intervene, turning a blind eye, or failing to train when their subordinates deprived Hardin of access to mail and the courts. (Am. Compl. ¶¶ 39–47, 62, ECF No. 45.)  All of the underlying injuries alleged against Defendant Brown and Littlejohn occurred in 2011, which on their face appear to be barred by the statute of limitations.  *See* Ind. Code. § 31-44-2-4 (establishing a two-year statute of limitations on personal injury claims); *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994) ("A § 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred.")  The Court permitted these pre-2020 claims to proceed, however, because it concluded at the pleading stage that Hardin sufficiently alleged continuing constitutional violations or that Defendants impeded his ability to access courts to file suit.  (Order 3, ECF No. 19.)

Defendants Brown and Littlejohn now move for summary judgment arguing that the claims against them are in-fact time barred because there were no continuing constitutional violations and because Hardin was able to file suit within the limitations period.  (Defs.' Mem. 20–24, ECF No. 90.)

The Court agrees.  As detailed herein, there was no constitutional violation at all, much less a continuing violation.  Also, the uncontroverted evidence shows that Hardin was not impeded from filing suit within the limitations period.

The record demonstrates that Hardin had sufficient access to the law library after the alleged 2011 injuries. Defendants produced evidence that Hardin's alleged deprivation of access to the law library between February 1, 2019, and May 17, 2021, was due to Hardin's failure to properly submit requests to attend the law library. (*See* Hardin Corr. 2, ECF No. 89-2) (Letter from Wabash Valley Correctional Facility explaining that they never received a request from Hardin to access the library). Hardin has not specifically controverted this factual assertion, it is supported by admissible evidence, and there is nothing in the record to suggest that Hardin was deprived of access to the law library between February 1, 2019, and May 17, 2021, so the Court accepts it as true.

Hardin has not cited any evidence that he was deprived of access to the law library before 2019. And the evidence in the record suggests that any inability to access the law library was due to his own failure to properly submit law library access requests. Thus, the evidence in the record indicates that Hardin was capable of conducting legal research after his alleged injuries in 2011 and that his claims against Littlejohn and Brown were barred two years after the injuries. But even if Hardin could prove that he was deprived of access to the law library sufficient to toll the statute of limitations period, he had undisputed access to the law library between February 1, 2019, and May 17, 2021. He neglected to pursue his claims during that period, which was longer than two years. Thus, the limitations period expired on May 17, 2021, at the latest. Additionally, there is no allegation that Defendants inhibited his ability

to hand-write court filings. Accordingly, Hardin was not prevented from pursuing his 2011 claims within the applicable statute of limitations.

As noted, there is no evidence that Hardin suffered a continuing violation sufficient to toll the limitations period. "A violation is continuing where it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (bracket in original) (internal quotations omitted). Here, Hardin's allegations against Littlejohn and Brown occurred in 2011. His next allegations in the Amended Complaint occurred in 2020. (*See* Am. Compl. ¶¶ 49–67, ECF No. 45.) Thus, there was an approximately nine-year gap following the alleged 2011 injuries until Hardin was allegedly injured again. Hardin could have reasonably pursued his claims against Littlejohn and Brown during that intervening period. Therefore, Hardin's claims against Littlejohn and Brown are barred by the statute of limitations.

The Court, however, finds that even if Hardin's claims were timely filed against Brown and Littlejohn, which they were not, no reasonable jury could conclude that Defendants Brown, Littlejohn, or Vanihel are liable in their capacity as supervisors. Generally, to prevail on a claim against a supervisor under § 1983, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022) (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Hardin has failed to cite to any evidence, beyond his unsupported conjecture, that any one of these elements is established against any of the Defendants.

In all events, however, the "first step in every § 1983 claim" is that the plaintiff must "initially prove he was deprived of a federal right." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (explaining that the plaintiff failed to establish a predicate constitutional or legal violation, thus barring the plaintiff from recovering against the municipality for allegations including failure to train, failure to discipline, and perpetuating a "code of silence"); *see, e.g., Bostic v. Vasquez*, 652 F. Supp. 3d 971, 982 n.9 (N.D. Ind. 2023) ("To succeed on [a] supervisory claim, [the plaintiff] has to identify a constitutional violation in addition to the requirements for [supervisory] liability.") (third bracket in original) (internal citations omitted)).

Here, as set out herein above, Hardin has failed to establish that he was deprived of a predicate constitutional or federal right. He failed to establish that he was deprived of his constitutional right to access courts because he failed to identify a claim that was materially frustrated. He also failed to establish that he was deprived of his constitutional right to access mail because he did not produce evidence that the mail disruptions were content-based or sufficiently frequent or long-term. He failed to establish that he was deprived of equal protection of law because he did not produce evidence that he was treated differently than a similarly situated comparator. Hardin failed to establish First Amendment retaliation because he did not show that any of his alleged mail disruptions or delays in receiving medical records were motivated by Hardin's First Amendment activity. Accordingly, no reasonable jury could find that Defendants Brown, Littlejohn, or Vanihel are liable as supervisors

under § 1983 for failure to train, failure to supervise, or turning a blind eye because Hardin was not deprived of any predicate constitutional or federal right.

## Conclusion

Mahurin's Motion for Summary Judgment, (ECF No. 92), is **granted**. The remaining Defendants' Motion for Summary Judgment, (ECF No. 88), is **granted**. This action against Bugher, Brock, Plunkett, Vanvleet, Carpenter, Wallace, Littlejohn, Brown, Vanihel, Powers, and Mahurin is **dismissed with prejudice**. The Court will issue final judgment under Federal Rule of Civil Procedure 58 by separate order. The Clerk shall **close this case**.

**SO ORDERED.**

Date: 3/31/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHARLES J. HARDIN
971477
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

25